FILED
United States Court of Appeals
Tenth Circuit

March 1, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

NORBERTO PEREZ AROCHO,

Plaintiff-Appellant,

v.

S. NAFZIGER, Clinical Director;
RON WILEY, The Warden of U.S.P.
Penitentiary – ADX; HARLEY G.
LAPPIN, Federal Bureau of
Prison – Director,

Defendants-Appellees.

No. 09-1095
(D.C. No. 1:07-CV-02603-REB-KLM)
(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before **HENRY**, Chief Judge, **BRORBY**, Senior Circuit Judge, and **HARTZ**,
Circuit Judge.

---

Plaintiff Norberto Perez Arocho brought this prison civil rights action

alleging that he was being denied recommended treatment for a Hepatitis C

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

infection damaging his liver and causing him pain. The district court adopted the magistrate judge's recommendation to dismiss the case at the pleading stage, holding that the complaint (1) failed to establish the court's personal jurisdiction over defendant Harley G. Lappin ("BOP Director Lappin"), and (2) failed to state a constitutional claim against defendants Steven Nafziger ("Clinical Director Nafziger") and Ron Wiley ("Warden Wiley"), entitling them to qualified immunity from damages in their individual capacities and precluding injunctive relief against them in their official capacities. After Mr. Arocho commenced this appeal, the district court denied him leave to proceed in forma pauperis under 28 U.S.C. § 1915(a)(3), finding that the appeal was not taken in good faith. We grant Mr. Arocho's renewed motion for leave to proceed in forma pauperis,[1] reverse the order of dismissal as to Lappin, affirm the dismissal as to Wiley, and modify the dismissal as to Nafziger to a dismissal without prejudice.

## The Complaint

For purposes of this appeal, we "tak[e] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in [the] complaint." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir.

---

[1]    In *Rolland v. Primesource Staffing, L.L.C.*, 497 F.3d 1077, 1079 (10th Cir. 2007), this court clarified that "a party who seeks in forma pauperis status and is certified by the district court as not appealing in good faith may nonetheless move this court for leave to proceed on appeal in forma pauperis." The basis for our conclusion that this appeal is taken in good faith should be clear from our ensuing discussion of the merits and need not be set out separately here.

2008) (citation omitted) (discussing review of order dismissing case on pleadings for lack of personal jurisdiction); *see also Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (discussing review of dismissal orders generally and qualified immunity dismissals in particular). The complaint invokes the court's jurisdiction pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Mr. Arocho has Hepatitis C. In July 2007, blood tests ordered by Clinical Director Nafziger revealed that the disease was damaging Mr. Arocho's liver. Nafziger recommended treatment with Interferon/Ribavirin. Because this medication can lead to depression, Mr. Arocho was evaluated for psychological fitness in September 2007, and was found mentally stable. In October 2007, Mr. Arocho asked Nafziger about the treatment, but he received no answer. After another inquiry, in January 2008, Nafziger stated that he was awaiting approval of the recommended medication from the BOP in Washington D.C. Mr. Arocho has continuously pressed for his recommended treatment ever since receiving the psychological fitness evaluation, but to no avail. The failure to provide the treatment has not only caused him pain and suffering but has exposed him to life-threatening liver damage, which may, in turn, render him unable to respond to treatment in the future.

The complaint asserts three claims for relief, one against each defendant. The Eighth Amendment claim against BOP Director Lappin has both specific and

general aspects.[2]  Specifically, Nafziger "sen[t] the Defendant Harley G. Lappin a recommendation for plaintiff['s] Hepatitis C treatment medical needs and medication, there was no doubt of the s[e]riousness of plaintiff['s] situation of his Hepatitis C[,] and . . . Lappin within his knowledge of plaintiff['s] d[i]sease . . . refuse[d] to approve the treatment."  R. vol. 1 at 271.  More generally, Lappin "fail[ed] to intervene and correct" the situation after receiving a copy of an administrative grievance Mr. Arocho filed at Florence in November 2007, and "ignored his duty imposed by his authority . . . to stop plaintiff['s] pain suffering, to prevent and correct the violations, [and] to enforce the institutional rules, regulations, and policy . . . and constitutional mandates . . . [for] medical care and treatment."  *Id.*

The Eighth Amendment claim against Clinical Director Nafziger relates to his conduct after recommending that Mr. Arocho be given Interferon/Ribavirin treatment.  Nafziger allegedly "failed to act for immediate treatment of plaintiff['s] condition with deliberate indifference," put off Mr. Arocho's repeated follow-up inquiries, sometimes telling him "to be patient" and on other occasions simply "ignor[ing] [his] complaints and request[s]," and "did nothing to prevent"

---

[2]     While a reference to "Equal Protection" is included in the heading for the claim, R. vol. 1 at 271, there are no allegations implicating that constitutional principle in the supporting facts.  We agree with the district court's construction of the complaint as asserting only an Eighth Amendment claim against Lappin.  On appeal, Mr. Arocho does not take issue with that construction and, in fact, casts his arguments exclusively in Eighth Amendment terms.

the delay and denial of proper treatment. *Id.* at 269. But the complaint does not specify what it is that Nafziger could and should have done to secure the treatment he had recommended, given BOP Director Lappin's alleged refusal to approve it.

The claim against Warden Wiley has two Eighth Amendment components and one Equal Protection component. As for the former, Wiley allegedly (1) knew of Nafziger's denial of treatment but ignored his duty as warden to intervene "to enforce the rules, regulations, program statement and institutional policy that include pain assessment[,] prescribed medication and proper treatment in a timely manner"; and (2) responded to an administrative grievance from Mr. Arocho regarding the recommended Interferon/Ribavirin treatment by incorrectly stating that it "will be schedule[d] as soon as the Clinical Director['s] patient load allow[s]." *Id.* at 270. As for Equal Protection, the claim broadly alleges that "other inmates have received the treatment with my same situation in [a] timely manner" and hence Wiley "violate[d] plaintiff['s] rights and the Equal Protection [C]lause that prohibits . . . selectively denying the plaintiff proper health care, medical treatment, [and] medication." *Id.*

The complaint requests three forms of relief. *See id.* at 273. First, it seeks an injunction ordering defendants to provide the recommended treatment for his

medical condition.[3]  Second, it seeks compensatory and punitive damages for pain, suffering, and any irreparable harm caused by the lack of treatment.  Third, for reasons that are not evident from the foregoing allegations, it also seeks a transfer to a prison in Puerto Rico.

## Personal Jurisdiction over BOP Director Lappin

### A.  District Court's Analysis

The complaint recites BOP Director Lappin's Washington, D.C. address. Thus, the district court noted that it could not exercise personal jurisdiction over him unless the Colorado long-arm statute authorized it to do so and the exercise of jurisdiction would comport with due process.  *See Dudnikov*, 514 F.3d at 1070 (noting that in the absence of applicable federal statute authorizing nationwide service of process, personal jurisdiction depends on forum state's long-arm statute and overarching constraints of due process).  Because the "Colorado long-arm statute . . . confers the maximum jurisdiction permissible consistent with the Due Process Clause[,] . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Id.*  Accordingly, the district court proceeded directly to the question of Lappin's contacts with the forum state, which is the lynchpin of the constitutional analysis.

---

[3]     *Bivens* suits are limited to damages, but equitable relief is available in the nature of injunction and/or mandamus under 28 U.S.C. §§ 1331 and/or 1361. *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231, 1236 (10th Cir. 2005).

There are two ways such contacts can satisfy due process:

First, if a defendant has "continuous and systematic general business contacts" with the forum state, it may be subjected to the general jurisdiction of the forum state's courts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984). . . .

Second, even in the absence of "continuous and systematic" contacts, a state's courts may exercise specific jurisdiction over a defendant that "purposefully directed" its activities at the state's residents, if the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

*Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007) (parallel citations omitted). The district court did not explicitly distinguish and discuss these lines of analysis. Rather, it summarily invoked three broad principles to support its conclusion that BOP Director Lappin had insufficient contacts with Colorado to support personal jurisdiction in this case. We summarize these principles, and explain why they do not preclude personal jurisdiction over Lappin, immediately below. Our own determination of the personal jurisdiction issue, under the controlling minimum-contacts analysis, is set out in section B below.

**1. Mere supervisory responsibility over actions causing injury**

The district court cited two unpublished decisions indicating that an official's supervisory responsibility over operations and facilities in other states does not, standing alone, constitute a sufficient basis for personal jurisdiction with respect to injuries resulting therefrom. R. vol. 4 at 142 (citing *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003), and *Hale v. Ashcroft*, No. 06-cv-00541,

2007 WL 2350150, at *3 (D. Colo. Aug. 15, 2007)).  While we do not necessarily take issue with this general principle,[4] the critical question is whether it applies to the allegations in the complaint.  The district court did not tie the two together with any specificity, but broadly characterized Mr. Arocho's complaint as basically claiming that "Lappin bears responsibility to ensure that his employees provide BOP inmates with proper medical care and medication." *Id.*  If Mr. Arocho's claim were fully captured in these passive and indirect terms, we would agree that the principle invoked by the district court applied here.  But as our examination of the complaint revealed, the more specific thrust of Mr. Arocho's claim against BOP Director Lappin is that he was actively and directly responsible for the denial of the medical treatment recommended for Mr. Arocho by prison medical personnel.  This is simply not a situation where an official is being haled into an out-of-state court merely because he has a remote supervisory relationship to the parties or the subject matter of a case.

---

[4]     Indeed, given a recent Supreme Court pronouncement, the basic concept of § 1983 or *Bivens* supervisory liability itself may no longer be tenable.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer.").  After *Iqbal*, circuits that had held supervisors liable when they knew of and acquiesced in the unconstitutional conduct of subordinates have expressed some doubt over the continuing validity of even that limited form of liability.  *See Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 n.7 (1st Cir. 2009).

-8-

## 2. Mere foreseeability of injury

The district court also cited this court's acknowledgment in *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996), that "mere foreseeability of causing injury in another state 'is not a sufficient benchmark' for exercising personal jurisdiction," *id.* at 1534 (quoting *Burger King*, 471 U.S. at 474) (further internal quotation omitted). R. vol. 4 at 142. Again, the critical question here is not the underlying principle invoked but whether that principle applies to the relevant factual allegations in the complaint. From what we have said in connection with the related point about supervisory responsibility, it should be clear that the complaint does not attribute liability to BOP Director Lappin on the basis of nothing more than the mere foreseeability of harm to Mr. Arocho at the hands of medical personnel at the federal penitentiary in Florence, Colorado. Mr. Arocho's claim is that the medical personnel in Colorado recommended treatment to avoid the harm but were prevented from following through by Lappin's specific refusal to approve it.

Of course the possibility of harm to Mr. Arocho may have been foreseeable—indeed, the subjective component of the deliberate-indifference standard *requires* that the defendant "knew [the plaintiff] faced a substantial risk of harm and disregarded that risk." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (internal quotation omitted); *see also Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006) (discussing objective and subjective components

of deliberate-indifference inquiry clarified in *Farmer v. Brennan*, 511 U.S. 825 (1994)).  But that is not to say that Lappin's liability is based on the mere foreseeability of harm; it is based, rather, on his allegedly active and direct role in denying medical treatment in the forum state that could have prevented the harm. *See Dudnikov*, 514 F.3d at 1077 (holding *Trierweiler*'s "mere foreseeability" principle inapplicable where plaintiff alleged "defendants here more than foresaw or knew the harm alleged to have befallen forum residents," they "undertook *intentional actions that were expressly aimed at that forum state*" with such foresight or knowledge).

### 3. Official actions as basis for individual-capacity suit

Finally, the district court quoted the following passage from another unpublished district court decision suggesting that personal jurisdiction over an official sued in his individual capacity cannot rest on actions taken in his official capacity:  "Further, 'the actions on which plaintiff relies in support of his allegations of personal jurisdiction all clearly were taken by [defendant in his capacity] as [a] federal official[] . . . .  Such actions do not suffice to establish minimum contacts for purposes of an individual capacity suit against a federal employee.'"  R. vol. 4 at 142 (quoting *Hale*, 2007 WL 2350150, at *3 (alterations in original)).  But *Hale* should not be read outside its narrow fact pattern to hold that a defendant's official actions are irrelevant to the analysis of personal jurisdiction in a *Bivens* suit.  Such actions are *the essence* of a *Bivens* suit.  While

*Bivens* defendants are sued in their individual capacities,[5] the claim itself must be based on "constitutional violations committed by federal agents *in the performance of their official duties*."[6]  *Farmer v. Perrill*, 275 F.3d 958, 960 n.4 (10th Cir. 2001) (emphasis added); *see United States v. Cusumano*, 67 F.3d 1497, 1514 (10th Cir. 1995) (*Bivens* suit addresses constitutional violations "committed by a federal officer in his official capacity"); *Romero v. Peterson*, 930 F.2d 1502, 1505 (10th Cir. 1991) (describing "federal actors" in *Bivens* suit as "[o]fficers acting under color of federal law in their official capacities, but sued in their individual capacities").

The jurisdictional analysis cannot ignore the very acts that are the basis for the suit and concentrate on acts legally immaterial to it.  Such an approach would squarely conflict with the established "specific jurisdiction" inquiry, which

---

[5]     Again, "[t]here is no such animal as a *Bivens* suit against a public official . . . in his or her official capacity." *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001).  If equitable relief rather than damages is sought from a federal official, it must be obtained against him in his official capacity through a claim in the nature of injunction or mandamus. *Simmat*, 413 F.3d at 1231.

[6]     The basic principle here, requiring the official to have acted "under color of his authority," *Bivens*, 403 U.S. at 389, has been a source of contention far more often in the context of state officers sued under 42 U.S.C. § 1983, where many cases can be cited to illustrate the distinction between actionable official misconduct and non-actionable private misconduct.  For some examples involving peace officers, see cases collected in *Gritchen v. Collier*, 254 F.3d 807, 812 n.6 (9th Cir. 2001).  One should suffice to make the point:  An officer who shoots a suspect or detainee may be subject to suit under § 1983, but an officer who shoots his wife (even with a firearm he is required to carry off-duty) is clearly not, *see Bonsignore v. City of New York*, 683 F.2d 635, 638-39 (2d Cir. 1982).

focuses on precisely those actions of the defendant that have given rise to the suit, *see Melea, Ltd.*, 511 F.3d at 1066.  To the extent that the unpublished district court decision in *Hale* embraces the view that official actions of a *Bivens* defendant are categorically excluded from the analysis of personal jurisdiction, we disapprove it.[7]

## B.  Controlling Analysis for Specific Jurisdiction

As we have already indicated in general terms, for the exercise of specific jurisdiction "the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities."  *Dudnikov*, 514 F.3d at 1071 (citing *Burger King*, 471 U.S. at 472).  "Additionally, exercising personal jurisdiction over defendants must always be consonant with traditional notions of fair play and substantial justice."  *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

---

[7]     We note that the district court supplemented its reliance on *Hale* here with a reference to a footnote in *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.9 (10th Cir. 2006), addressing a § 1983 complaint that offered jurisdictional allegations in support of its official capacity claims but not its individual capacity claims.  R. vol. 4 at 142.  But recognizing that personal jurisdiction over an individual official and personal jurisdiction over the office or entity he represents are distinct matters is entirely proper.  More to the point, *Trujillo* did not say, as the district court did in *Hale*, that personal jurisdiction over an individual officer cannot be based on his official actions.  *Trujillo* just noted, rather, that the plaintiff *had not alleged any* jurisdictional contacts with the forum state in connection with his individual capacity claims.  465 F.3d at 1218 n.9 ("Nowhere in his complaint does [plaintiff] allege that any defendants acting in their *personal* capacities have contacts with the [forum] State.").

-12-

The plaintiff bears the burden of demonstrating sufficient minimum contacts, but once that is done, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1080 (internal quotation omitted).

### 1. "Purposefully directed" element

We draw guidance on the "purposefully directed" aspect of the inquiry from *Calder v. Jones*, 465 U.S. 783 (1984), which encompasses the following elements: "(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072 ("Distilling *Calder* to its essence [in these three elements]."). Because we assess personal jurisdiction here at the pleading stage, our review is *de novo* and we require only a *prima facie* showing of the requisite elements. *Id.* at 1070.

The complaint alleges that BOP Director Lappin refused to approve the medication recommended for Mr. Arocho's Hepatitis C infection by his treating physician. Whether or not that decision is ultimately found to have violated Mr. Arocho's Eighth Amendment rights, it is clearly pled as an intentional act. And it was aimed at the forum state: Lappin did not allegedly issue some generalized prohibition on Interferon/Ribavirin treatment in federal prisons; he denied a specific treatment request by a Colorado prison physician, precluding use of the requested medication to an inmate in the federal facility in Florence,

-13-

Colorado. Finally, under the circumstances, it can hardly be denied that Lappin knew the brunt of the injury would be felt in Colorado. In sum, the actions alleged were "performed for the very purpose of having their consequences felt in the forum state," and thus "are more than sufficient to support a finding of purposeful direction under *Calder*." *Dudnikov*, 514 F.3d at 1078 (internal quotation omitted).

Of course, the question of personal jurisdiction can always be revisited at a post-pleading stage of the proceedings, where the evidence may show that the relevant facts are other than they have been pled (by showing, for example, that Lappin actually had nothing to do with the denial of Hepatitis C treatment, or was connected with the denial of treatment only through application of a broad policy issued at the national level and was unaware of any harm that would specifically befall Mr. Arocho in Colorado). *See id.* at 1069 n.3. And when personal jurisdiction is assessed at an evidentiary hearing or at trial, the plaintiff generally must substantiate his allegations with proof by a preponderance of the evidence. *Id.* at 1070 n.4. But for present purposes, the requisite "purposeful direction" is more than adequately pled in the complaint.

## 2. "Arising out of" element

"Having determined that defendant[] 'purposefully directed' [his] activities at the forum state, due process requires us next to ask whether plaintiff['s] injuries 'arise out of' defendant['s] contacts with the forum jurisdiction." *Id.* at

1078. Regardless of whether this involves a basic but-for or a more restrictive proximate-cause inquiry, *see id.* at 1079 (noting but not choosing between these two tests where alleged facts would satisfy either one), the answer is obvious here. Given that the alleged injury (pain and liver deterioration associated with untreated Hepatitis C) is a direct and immediate function of the allegedly wrongful act purposefully directed at Colorado by BOP Director Lappin (denial of Mr. Arocho's treatment for Hepatitis C at the Florence facility), the actionable harm in this case clearly arises out of the defendant's contacts with the forum state.

## 3. Traditional notions of fair play and substantial justice

Because Mr. Arocho has established the requisite minimum contacts between BOP Director Lappin and the forum state for purposes of the particular claim asserted here, exercising personal jurisdiction over him is proper absent "a compelling case" that to do so would "offend traditional notions of fair play and substantial justice." *Id.* at 1080 (internal quotations omitted). Appellees' brief just reasserts the points and authorities cited by the district court with respect to minimum contacts and makes no case, much less a compelling one, that the exercise of personal jurisdiction based on the contacts here would somehow be unfair or unjust.[8] *See* Aplee. Br. at 16-17.

---

[8] Lappin also asks us to affirm the district court on the alternative basis that Mr. Arocho's pro se brief, which challenges the dismissal of his claims in general

(continued...)

Nor do we discern circumstances indicating that such a case could be made. In this regard, we consider such factors as:

> "(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies."

*Dudnikov*, 514 F.3d at 1080 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998)) (alterations in original). The plaintiff's interest certainly favors the local forum he has chosen, and given that the majority of relevant testimonial and documentary evidence is directly available there, overall judicial efficiency aligns with his interest. While the facility involved is a federal prison, the forum state is not disinterested in the proper treatment of inmates residing there (even if they may be citizens of another

[8](...continued)
terms and does not present any argument specifically as to personal jurisdiction, has waived the matter. Aplee. Br. at 14-15. Whether to disregard an erroneous ruling on waiver grounds is a matter committed to our discretion. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1179 n.8 (10th Cir. 2005). We note Lappin was not prejudiced by the pro se briefing here; the only ground stated by the district court for dismissing the claim against him was lack of personal jurisdiction, so he was clearly on notice of the ruling he needed to defend on appeal and he has briefed the issue. Moreover, this court has favored ruling on the merits notwithstanding grounds for waiver where the dispute involves a question of law and its resolution is certain. *See Counts v. Kissack Water & Oil Serv., Inc.*, 986 F.2d 1322, 1325-26 (10th Cir. 1993); *see also Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1271 (10th Cir. 2000) (citing several cases). As our discussion of the personal jurisdiction issue demonstrates, that is the case here, and we resolve the matter accordingly in the interest of justice.

-16-

state[9]). And even assuming Lappin would prefer to litigate the claim against him in Washington D.C. (i.e., that his challenge to jurisdiction here countenances transfer to or re-filing in Washington D.C., rather than just the immediate tactical advantage of dismissal[10]), the "burden on the defendant" factor would not suffice to tip the scale compellingly in his favor. As these proceedings reflect, the BOP Director can count on the resources and legal staff of the United States Attorney for Colorado to defend his interests in this pro se lawsuit. We cannot say "that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [BOP Director Lappin] unfairly is at a severe disadvantage in comparison to his opponent.'" *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (quoting *Burger King*, 471 U.S. at 478).

In sum, sufficient contacts exist between Lappin and the forum State of Colorado to support specific personal jurisdiction in this case, and the exercise of

---

[9] "[I]ncarceration in a state does not make one a citizen of that state." *Bontkowski v. Smith*, 305 F.3d 757, 763 (7th Cir. 2002); *accord Smith v. Cummings*, 445 F.3d 1254, 1260 (10th Cir. 2006).

[10] We note that if we agreed with the district court's analysis of personal jurisdiction, its dismissal of the claim against Lappin without an evaluation of whether justice warranted, rather, a transfer under 28 U.S.C. § 1631 would require a remand for consideration of that alternative. *See Trujillo*, 465 F.3d at 1223. And we would in any event have to correct the district court's dismissal of the claim *with prejudice*; when a court lacks jurisdiction over a party, the proper disposition is dismissal without prejudice to permit refiling where personal jurisdiction may be exercised, *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1216 (10th Cir. 2002).

such jurisdiction does not offend traditional notions of fair play and substantial justice. Dismissal of the action against Lappin on this basis was, therefore, in error. We note, however, that, in conjunction with their defense of the dismissal of the other defendants on the merits, appellees contend we may affirm Lappin's dismissal from the case on the alternative basis that Mr. Arocho failed to state a claim against him. We take up that argument below, considering *de novo* whether Mr. Arocho "plausibly (not just speculatively) has a claim for relief."[11] *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223, 1224 (10th Cir. 2009) (internal quotation omitted), *cert. denied*, 130 S. Ct. 742 (2009).

---

[11] We recognize that, absent cross-appeal, an appellee may argue alternative grounds only to affirm the order under review and may not urge grounds "with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Montgomery v. City of Ardmore*, 365 F.3d 926, 944 (10th Cir. 2004) (internal quotation omitted). And converting a dismissal without prejudice (the proper disposition for lack of personal jurisdiction, *see supra* page 17, note 10), to a dismissal with prejudice (the disposition that would attend a merits ruling), represents an enlargement of an appellee's rights requiring a cross-appeal. *See, e.g.*, *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 560 F.3d 118, 126 (2d Cir. 2009); *Lee v. City of Chicago*, 330 F.3d 456, 471 (7th Cir. 2003). But the order under review here actually did dismiss the claim against Lappin with prejudice (albeit erroneously), so arguing now for a merits dismissal would not entail an enlargement of the rights granted Lappin by the district court. The fact that the disposition was erroneous does not bar alternative arguments for affirmance; indeed, error in the order under review is the *occasion* for raising such arguments.

**Dismissal of *Bivens* Damages Claims on the Merits**

## A. BOP Director Lappin

An Eighth Amendment deliberate-indifference claim may be shown if "a prison official knows of and disregards an excessive risk to inmate health," where a serious medical need—such as a condition diagnosed as requiring treatment—is involved. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (internal quotation omitted). Defendants assert that "there is no allegation that Defendants Wiley or Lappin—who are not doctors—knew that Mr. Arocho required access to this specific treatment [i.e., Interferon/Ribavirin], and on an emergency basis, or that failure to approve that treatment would seriously and irreparably harm him." Aplee. Br. at 23. On the contrary, as our prior review of the complaint shows, the crux of the claim against Lappin is that he knew the serious disease Mr. Arocho suffers from and knew that Clinical Director Nafziger recommended treatment of the condition with Interferon/Ribavirin, and yet refused to approve the treatment. The facts alleged make out a plausible case of deliberate indifference. That Lappin is not a doctor does not undermine such a claim; rather it only focuses the claim on a long-recognized scenario of deliberate indifference: acts by lay officials that prevent access to treatment recommended or prescribed by medical personnel. *See, e.g.*, *Martinez*, 430 F.3d at 1304; *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992); *Garcia v. Salt Lake County*, 768 F.2d 303, 307 n.3 (10th Cir. 1985); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

Of course, Lappin may still attempt to show that he had a constitutionally legitimate justification for denying treatment. But, at this stage, Mr. Arocho has stated a plausible claim of deliberate indifference against him. Factual challenges to that claim must be pursued through summary judgment.[12]

[12] We note an erroneous line of analysis in this vein in the district court's decision, which is repeated in appellees' briefing. The court cited an affidavit submitted by defendants indicating that nine months after this suit was filed, another physician at Florence conducted additional tests on Mr. Arocho and determined that he was then (in October 2008) not a candidate for treatment due to blood-count parameters. R. vol. 4 at 147-48. In the district court's view, this showed that Mr. Arocho's claim turned on a mere difference of medical opinion, which cannot demonstrate deliberate indifference. *Id.* at 148. There are procedural and substantive problems with this analysis.

As for procedure, it is improper to decide a motion to dismiss on the basis of evidence submitted by the defendant–that is what summary judgment is for. The court considered its course of action authorized by the fact that it "may take judicial notice of court documents and matters of public record." *Id.* (quotation omitted). But a party's evidentiary materials are not "court documents" that may be judicially noticed as true: "a court cannot notice pleadings or testimony as true simply because these statements are filed with the court" and "a court cannot take judicial notice of the truth of a document simply because someone put it in the court's files." 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5106.4 at 232, 234 (2d ed. 2005). Thus, for example, the content of an affidavit generated to support a party's case does not become judicially noticeable fact when the party files the affidavit with the court. *See, e.g.*, *United States v. Burch*, 169 F.3d 666, 672 (10th Cir. 1999). If it were otherwise, a party could just attach all of his evidence to a motion for dismissal and thereby vitiate the critical distinction between dismissal proceedings, which are supposed to challenge the legal sufficiency of the complaint, and summary judgment proceedings, which properly encompass opposing evidence.

As for substance, defendant's affidavit, indicating that the treatment recommended in 2007 was no longer appropriate in October 2008, does not demonstrate a difference of opinion as to the initial recommendation. And, of course, as Mr. Arocho has consistently claimed, the failure to treat his disease for

(continued...)

-20-

**B. Clinical Director Nafziger**

Before we get to the nub of Mr. Arocho's claim against Nafziger, we wish to clear away two meritless points advanced against it. First, defendants seize and expand upon the district court's characterization of the case as involving nothing more than a difference of medical opinion in light of the more recent October 2008 blood tests that, in the testing physician's opinion, disqualified Mr. Arocho for treatment. Aplee. Br. at 20-23. What we have just said about this procedurally improper and substantively inadequate line of argument in connection with the claim against Lappin, *see supra* page 20, note 12, is equally pertinent here. Second, to the extent Nafziger is included in appellees' indiscriminate statement that "there is no allegation that the Defendants were aware of any emergent need for Interferon/Ribavirin," Aplee. Br. at 20, the contention borders on the frivolous. Nafziger allegedly *recommended the Interferon/Ribavirin treatment* because his testing revealed that Mr. Arocho's Hepatitis C *was causing liver damage*.

The general theme of the complaint, attributing primary responsibility for the denial of treatment to Lappin, appears to supply Nafziger with grounds for exoneration rather than liability: Nafziger discovered the immediate threat posed

---

[12](...continued)
such an interval itself may give rise to cognizable harm. *See generally Erickson v. Pardus*, 551 U.S. 89, 92 (2007) (recognizing sufficiency of claim that prisoner "will suffer irreparable damage if his [Hepatitis C] disease goes untreated").

by the Hepatitis C, concluded that Interferon/Ribavirin treatment was appropriate, and recommended that Lappin approve the treatment. As the district court concluded, this "does not evidence the degree of neglect sufficient to find that Defendant Nafziger was deliberately indifferent to Plaintiff's medical needs. Indeed, it evidences no neglect at all." R. vol. 4 at 148-49 (citation omitted).

But there is a second, counter-theme evident, though less prominent, in the claim directed specifically at Nafziger. Mr Arocho attributes the *continuing* delay in obtaining the recommended treatment, at least in part, to Nafziger's own inaction and indifference. He alleges that since his favorable psychological assessment for the treatment in September 2007, he has "contact[ed] . . . the health care service, S. Nafsinger [sic], requesting the treatment – medication – status of his case and complaint about symptoms of the Hepatitis C as pain and other symptoms and they answered to be patient and in other oc[c]asions have ignored [his] complaints and request[s] – intentionally – with deliberate indifference." R. vol. 1 at 269. And, though Nafziger recommended the Interferon/Ribavirin regimen, he then "failed to act for plaintiff's im[m]ediate treatment" and is at least partially responsible for the subsequent delay, which he "did nothing to prevent." *Id.*

These are factually thin allegations. Indeed, the only facts stated concern the insensitive response given to Mr. Arocho's inquiries about the status of his recommended treatment. But complaints about poor patient-communication do

not, at least standing alone, evince deliberate indifference to a serious medical need. So long as Nafziger adequately pursued the treatment recommended for Mr. Arocho's medical condition, an Eighth Amendment claim cannot be made out on the basis that he simply neglected to keep Mr. Arocho fully apprised of the status of the recommendation. Of course, Mr. Arocho also considers Nafziger partly to blame for the delay and ultimate denial of the recommended treatment, as the more general allegations quoted above reflect. But he offers no suggestion, much less a plausible factual specification, as to what Nafziger failed to do in making and medically supporting his recommendation or in prompting a more appropriate response to its exigency.

"[T]he pleading standard Rule 8 [of the Federal Rules of Civil Procedure] announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). A complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and where its allegations "are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations omitted). Here, the most that can be said about Nafziger's alleged actions–recommending the Interferon/Ribavirin treatment upon discovering that Hepatitis C was damaging Mr. Arocho's liver, and then waiting on approval of the

treatment by the authorities–is that they do not necessarily preclude his liability for the alleged delay and denial of medical treatment. But such liability is nothing more than a theoretical possibility in the absence of other, unnamed acts about which the court can only speculate at this point. We therefore agree with the district court that Mr. Arocho has not stated a claim for relief against Nafziger.

But there are additional considerations here, particularly given our reinstatement of the case against BOP Director Lappin, that weigh in favor of providing Mr. Arocho an opportunity to cure this pleading deficiency. While the conclusory allegations regarding Nafziger's role in the delay/denial of treatment fall short of stating a claim, when viewed in light of the litigation position espoused by BOP Director Lappin, they nevertheless warrant the exercise of some caution in foreclosing the possibility of liability on Nafziger's part. The claims against these two defendants are to some degree in direct opposition, creating a "zero-sum game" of liability: the stronger the claim that Nafziger failed to properly support or press for treatment, the weaker the claim that Lappin should be held liable for not approving it; conversely, the more Nafziger did to satisfy his duty to secure the necessary treatment, the stronger the claim against Lappin for denying it. And the litigation positions separately advanced by these defendants do seem to exploit (however innocently) this situation. Nafziger notes that he recommended Interferon/Ribavirin and insists his "efforts to gain approval

of this medication for Mr. Arocho are not indicative of negligence, but rather of diligence." Aplee. Br. at 20.  But, as we have seen, Lappin's position is that he was not aware that this particular treatment was needed, or that the need for treatment was urgent, or that Mr. Arocho could suffer serious and irreparable harm if Lappin failed to approve it.  *See id.* at 23.  All of which begs the crucial question:  what did Nafziger convey to Lappin about Mr. Arocho's condition, the need for Interferon/Ribavirin, and the harm involved if the treatment was denied or delayed?

Obviously, the facts known to and alleged by Mr. Arocho cannot settle that question.  He knows only what he has experienced and what he has been told by defendants, i.e., that Hepatitis C is causing him pain and damaging his liver, that Nafziger recommended he be treated with Interferon/Ribavirin, and that Lappin refused to approve the treatment.  The nature and extent of the exchange between Nafziger and Lappin, which may exonerate one (or both) while implicating the other (or both), is known only by defendants.  In such circumstances, to dismiss the claim against Nafziger without one more chance at amendment following the reinstatement of the claim against Lappin could lead to a real injustice:  after the dismissal, Lappin could oppose the claim against him by submitting evidence on summary judgment indicating that all of the fault lay, rather, with Nafziger who, having been dismissed with prejudice from the case, could not be brought back in to answer for his now-demonstrated liability.

Under the unique circumstances here, and particularly given our reinstatement of the case against BOP Director Lappin, we deem it appropriate to afford Mr. Arocho an opportunity to amend his pleadings on remand to state a claim, if possible, against Nafziger. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (affirming dismissal of pro se prisoner complaint, but remanding "with instructions that the dismissal be without prejudice to plaintiff's filing an amended complaint.").

## C. Warden Wiley

The *Bivens* claim against Warden Wiley was properly dismissed with prejudice. Mr. Arocho's allegation that Wiley erroneously denied a grievance he had filed regarding his Hepatitis C treatment does not state an actionable claim. This court has repeatedly held, albeit in unpublished decisions, "that 'the denial of . . . grievances alone is insufficient to establish personal participation in the alleged constitutional violations.'" *Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (quoting *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007)); *accord George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). We do not mean to rule out the possibility of liability where the officer denying a grievance has an independent responsibility for the wrong in question and the grievance provides the necessary notice of the wrong or the effective means to correct it. But, as explained below, the complaint fails to

-26-

allege grounds on which Warden Wiley could be held responsible for the medical decisions involved here.

Mr. Arocho's allegation that Wiley failed to properly supervise the medical facility at Florence is also facially inadequate. The traditional standard for supervisory liability in this circuit "requires allegations of personal direction or of actual knowledge and acquiescence" in a subordinate's unconstitutional conduct. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). As alluded to earlier, the Supreme Court's recent discussion of supervisory liability casts doubt on the continuing vitality of even this limited formulation of such liability:

> Respondent . . . argues that, under a theory of "supervisory liability," petitioners can be liable for knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees. That is to say, *respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument.* Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents. In a § 1983 suit or a *Bivens* action–where masters do not answer for the torts of their servants–the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

*Iqbal*, 129 S. Ct. at 1949 (internal citation and quotations omitted; emphasis added). In any event, Mr. Arocho's allegations do not satisfy our extant standard. His claim here is that "warden [Wiley] was in the position to correct plaintiff['s] rights violation and fail[ed] to do so." R. vol. 1 at 270. To the extent the rights violation was a function of BOP Director Lappin's decision, Lappin is obviously not Wiley's subordinate and any allegation that Wiley was in a position to "correct" Lappin's decision would be facially implausible. With respect to Nafziger, there are no facts alleged to suggest that Wiley knew of and acquiesced in any act of deliberate indifference by Nafziger, who had tested Mr. Arocho, recommended treatment, and was simply waiting for approval. The complaint bespeaks nothing more than a warden's reasonable reliance on the judgment of prison medical staff, which *negates* rather than supports liability. *See McRaven v. Sanders,* 577 F.3d 974, 981 (8th Cir. 2009) (quoted in *Weatherford ex rel. Thompson v. Taylor,* No. 09-7018, 2009 WL 3164727, at \*2 (10th Cir. Oct. 5, 2009) (unpub.)); *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

Finally, Mr. Arocho's claim that Wiley violated his right to equal protection is patently deficient. The sole allegation in this respect is: "Other inmate's [sic] have received the treatment [presumably Interferon/Ribavirin] with my same situation in [a] timely manner." R. vol. 1 at 270. In addition to its utterly conclusory nature, this allegation does not remotely suggest a plausible

factual basis for attributing such differential treatment to *the warden of the prison*, who is not responsible for the recommendation of medical treatment or the approval of such treatment.

## Dismissal of Claims for Injunctive Relief

The district court held injunctive relief unavailable because its "finding that Plaintiff has failed to state a claim against Defendants necessarily means that his claim for injunctive relief, although not prohibited on jurisdictional grounds [i.e., sovereign immunity], cannot stand." R. vol. 4 at 150 n.4. The premise for this holding has been significantly altered by our analysis of the *Bivens* claims against Lappin and Nafziger. Injunctive relief from Lappin is obviously no longer legally foreclosed, and the dismissal of the claim for injunctive relief against Nafziger should be without prejudice.

Accordingly, the judgment of the district court is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this order and judgment. Specifically, we affirm the dismissal with prejudice of the claims against defendant Wiley, reverse the dismissal of the claims against defendant Lappin, and direct that on remand Mr. Arocho be provided on opportunity to amend his pleadings, if possible, to state a legally sufficient claim against defendant Nafziger. In addition, appellant's motion for appointment of appellate counsel is DENIED, his motion for leave to proceed in forma pauperis, i.e., without prepayment of the filing fee, is GRANTED, and we

-29-

remind appellant that he is obligated to continue making partial payments until the entire fee has been paid. Finally, appellant's request to file new documents as evidence before this court is DENIED, without prejudice to renewal of the request in the proceedings on remand.

ENTERED FOR THE COURT
PER CURIAM