Enrique ACOSTA, Plaintiff,

v.

**Michael G. NELSON et al., Defendants.**

**Civil Action No. 09-1300 (RLW)**

United States District Court,
District of Columbia.

Signed 04/24/2012

---

Enrique Acosta, Coleman, FL, pro se.

Judith A. Kidwell, Wynne Patrick Kelly, U.S. Attorney's Office for the District of Columbia, Washington, DC, for Defendants.

## MEMORANDUM OPINION[1]

ROBERT L. WILKINS, United States District Judge

In this *pro se* action transferred from the United States District Court for the Northern District of Florida, plaintiff, a federal prisoner, initially sued Harrell Watts, Administrator of National Inmate Appeals for the Bureau of Prisons ("BOP"), and unknown employees of BOP's Office of Medical Designation and Transportation for allegedly violating his Eighth Amendment right to "needed medical care/surgery ... to cure his degenerative joint disease on his right elbow." Am. Compl. [Doc. # 15-8] at 10. The claims against Watts were dismissed prior to the transfer of this action. *See Acosta v. Central Office Medical Designator*, No. :07cv82/MCR/MD (N.D.Fl. Sept. 23, 2008), Order at 1 n.2 [Doc. # 15-12].

In his recommendation to transfer the case to this Court, Magistrate Judge Miles Davis identified the unknown employees and substituted Dr. Michael G. Nelson and Dr. Betzy Hernandez-Ricoff, *see* Order and Report and Recommendation [Doc. # 16-4], who move jointly to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure or for summary judgment under Rule 56 [Doc. # 7]. Upon consideration of the parties' submissions and the relevant parts of the record, the Court finds that defendants are entitled to summary judgment on plaintiff's claim brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29

---

1. This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

L.Ed.2d 619 (1971).[2] Hence, the Court will grant defendants' motion for summary judgment and enter judgment accordingly.

## BACKGROUND

What remains of this action arises out of decisions made by Nelson and Hernandez-Ricoff in 2006. *See* Am. Compl. at 5-6. The basic facts documented in defendants' Statement of Material Facts [Doc. # 7-1] are not disputed. Prior to his incarceration in 1993, plaintiff suffered an injury to his right elbow in a car accident in 1984. Defs.' Facts ¶ 1; Am. Compl. at 5. On March 8, 2005, medical staff at the Federal Correctional Institution ("FCI") in Jesup, Georgia, referred plaintiff to an orthopedic surgeon who, on March 9, 2005, "found that while [plaintiff's] elbow problem could not be corrected, it may be improved with surgery and recommended [plaintiff's] transfer[ ] to a medical facility at Rochester." Defs.' Facts ¶ 6 & Ex. 5 (Medical Record Consultation Sheet).

Plaintiff was transferred on April 6, 2005, to FCI Marianna in Florida. *Id.* ¶ 7. Upon his arrival there, plaintiff was diagnosed with "right elbow ankylosis" and other conditions not material here. *Id.*, Ex. 3 (Decl. of Natalie Pelt ¶ 2). While at FCI Marianna, plaintiff was seen by medical staff "approximately every three to six month[s]" between July 2005 and September 2009, and plaintiff's "medical records also reflect that [he] received regular medical care specifically for his elbow" from October 2003 to September 2007. *Id.* ¶¶ 2, 4.

On June 15, 2005, the Clinical Director at FCI Marianna "denied the orthopedic consultation request." Pelt Decl. ¶ 3. On August 10, 2006, plaintiff filed an administrative grievance "requesting surgery on his arm," which was "partially granted on August 24, 2006," in the form of a request to BOP's Central Office in the District of Columbia to transfer plaintiff to a BOP medical facility "for surgical repair of [plaintiff's] arm." Defs.' Facts, Ex. 2 (Decl. of Ruth Wombacher ¶ 5 & Attach. 2). On September 6, 2006, the Central Office denied the request but also directed: "[p]er the Chief Health Programs, HSD [defendant Nelson], please provide a description of [plaintiff's] functional limitations, has he been stable, or getting worse?" *Id.*, Ex. 9 (Memorandum for Chief Executive Officer, FCI Marianna).

Following an examination of plaintiff on September 11, 2006, it was stated in an addendum to the medical request that "[h]e still has the same degree of limitations on the use of his right upper extremity . . . . He continues to be the pitcher in [sic] his softball team . . . uses his affected arm to throw the ball [and] . . . has the same functional problem with his right hand/elbow since the accident of 1983 [sic]. He has good grip in both hands. The use of his right hand is limited by his inability to fully extend and flex the elbow." It was also noted that plaintiff's softball "team won the tournament this summer." *Id.*, Ex.

---

**2.** Plaintiff does not state in what capacity he is suing defendants and he does not seek monetary relief. Because recovery under *Bivens* "is damages or nothing," *Davis v. Passman*, 442 U.S. 228, 245, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (citation and internal quotation marks omitted), assessed against the offending federal official in his or her personal capacity, this pleading deficiency supports dismissal of the instant complaint but with leave to amend. Given the developed record in this case, such a disposition would unnecessarily prolong the inevitable outcome. Therefore, the Court will assume that plaintiff, having invoked *Bivens*, *see* Am.Compl. at 7, is suing defendants in their personal capacity for monetary damages. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring liberal construction of *pro se* pleadings).

1 at 2. On September 24, 2006, the Acting Chief of Health Programs, defendant Hernandez-Ricoff, denied the medical transfer request, *id.*, Ex. 11, "based upon available medical information"—including the addendum—"indicating that limitations in [plaintiff's] range of motion were not affecting his activities of daily living; and the scope of medical services provided by the BOP." *Id.*, Ex. 12 (Decl. of Betzy Hernandez-Ricoff, M.D. ¶ 3).

## LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Moore v. Hartman*, 571 F.3d 62, 66 (D.C.Cir.2009) (citing Fed. R. Civ. P. 56(c) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A genuine issue of material fact exists if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. When determining whether genuine issues of material fact exist, the court must draw all justifiable inferences from the evidence in favor of the nonmovant. *Id.* at 255, 106 S.Ct. 2505. However the nonmovant cannot simply rest on his pleadings; rather "the nonmoving party [must] go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

## DISCUSSION

■ In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). To succeed on a *Bivens* claim, a plaintiff must show that the official was personally involved in the alleged unconstitutional conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that in a *Bivens* action, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). "And a prison official's decision on an inmate grievance with respect to an alleged constitutional violation does not itself render him personally liable under *Bivens*." *Gonzalez v. Holder*, 763 F.Supp.2d 145, 150 (D.D.C.2011) (citing cases).

■ Plaintiff alleges that defendants were deliberately indifferent to his medical need in violation of the Eighth Amendment. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court concluded:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [Bivens].

*Id.* at 104–05, 97 S.Ct. 285 (citations and footnotes omitted); *see Arocho v. Nafziger*, 367 Fed.Appx. 942, 952 (10th Cir.2010) ("An Eighth Amendment deliberate-indifference claim may be shown if 'a prison official knows of and disregards an excessive risk to inmate health,' where a serious

medical need-such as a condition diagnosed as requiring treatment-is involved.") (citation omitted). On the other hand, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105, 97 S.Ct. 285. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106, 97 S.Ct. 285. To be held liable "for denying an inmate humane conditions" in violation of the Eighth Amendment, the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

### Plaintiff's Claim Against Dr. Nelson

■ Plaintiff's claim against Nelson is based on the Memorandum from the Office of Medical Designations and Transportation Central Office to the Chief Executive Officer at FCI Marianna, denying the medical transfer request while indicating that Nelson had requested additional information about plaintiff's condition—*i.e.*, "a description of his functional limitations" and whether he was "stable, or getting worse." Defs.' Ex. 9. Nelson states that in his capacity as then-Chief of Health Programs, he "denied [the] request based upon the available medical information, and I requested additional medical information from the institution." Decl. of Michael B. Nelson, D.O. ¶ 3 [Doc. # 7-11]. No reasonable juror presented with these facts could find that Nelson was indiffer-

ent, deliberate or otherwise, to plaintiff's medical need.

### Plaintiff's Claim Against Dr. Hernandez-Ricoff

■ Plaintiff's claim against Nelson's successor, Hernandez-Ricoff, fares no better. Although Hernandez-Ricoff, in her then-capacity as Acting Chief of Health Programs, denied the medical transfer request, defendants' evidence establishes that she had reasonably relied on information obtained from the medical staff at FCI Marianna "indicating that limitations in [plaintiff's] range of motion were not affecting his activities of daily living . . . ." Hernandez-Ricoff Decl. ¶ 3. In his opposition filed on February 22, 2010, plaintiff proffers his declaration listing 17 mostly daily activities that he claims are difficult to perform because of "the very limited use of my right arm due to the deformity of my elbow." Decl. of Enrique Acosta [Doc. # 11]. Plaintiff does not state or even suggest, however, that Hernandez-Ricoff was aware of those limitations when she denied the medical transfer request in 2006. Nor has he proffered any evidence to refute the information upon which she did rely to conclude the opposite.

Furthermore, defendants' evidence establishes that Hernandez-Ricoff's decision comported with BOP's policy on the "five major levels of care," ranging from "medically necessary" to "extraordinary." Defs.' Ex. 13 (BOP Program Statement P6031.01, 1/15/2005, ¶ 7) [Doc. # 7-14]. Contrary to plaintiff's suggestion that the surgery was required because it would "cure" him, Am. Compl. at 10, the recommending orthopedic surgeon described plaintiff's condition as "a difficult problem that can be *improved* by repair. . . ."[3] Defs.' Ex. 5 [Doc.

---

**3.** Plaintiff alleges that on July 11, 2006, an orthopedic surgeon at FCI Marianna also recommended that he have the surgery. Pl.'s

Resp. [Doc. # 11] at 2 (citing Defs.' Ex. 8). But the exhibit he cites does not substantiate this claim. In a "Narrative Summary", Dr.

# 7-5] (emphasis supplied). Thus, Hernandez-Ricoff could have reasonably considered the request under the policy's standards for conditions deemed "Medically Acceptable—Not Always Necessary ... considered elective procedures," examples of which include "joint replacement [and] reconstruction of the anterior cruciate ligament of the knee." Program Statement ¶ 7c.

"Policies enacted pursuant to BOP's statutory mandate to administer the nation's prisons are entitled to great deference[,]" *Sample v. Bureau of Prisons,* 466 F.3d 1086, 1089 (D.C.Cir.2006), and "the question whether ... additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" that presents no cognizable claim under the Eighth Amendment.[4] *Estelle,* 429 U.S. at 107, 97 S.Ct. 285. Even if plaintiff could sustain an Eighth Amendment claim, no reasonable juror could find Hernandez-Ricoff personally liable for the rationally based decision she made as acting chief of BOP's health programs to deny plaintiff's request for elective surgery. *See Arocho,* 367 Fed.Appx. at 956 ("The complaint bespeaks nothing more than a warden's reasonable reliance on the judgment of prison medical staff, which negates rather than supports liability.") (citations omitted).

## CONCLUSION

For the foregoing reasons, the Court finds no genuine issues of material fact in dispute with regard to plaintiff's *Bivens* claim against either Dr. Nelson or Dr. Hernandez-Ricoff and further finds that these remaining defendants to this action transferred from the Northern District of Florida are entitled to judgment as a matter of law. A separate final order accompanies this Memorandum Opinion.

---

Tito Tanguilig reported that plaintiff "had seen orthopedic surgeons in the past and was recommended to undergo surgical debridement and repair" and that he was "being referred for further evaluation and treatment." Defs.' Ex. 8 [Doc. # 7-9] (Medical/Surgical and Psychiatric Referral Request). Plaintiff wrongly concludes that "[t]he evidence clearly shows that two medical opinions were ignored ...." Pl.'s Resp. at 2.

4. Since plaintiff's failure to state a claim is dispositive, the Court will not address defendants' equally persuasive argument for dismissal on the ground of qualified immunity. *See* Defs.' Mem. of P. & A. in Support of Their Mot. to Dismiss, or in the Alternative, for Summ. J. at 7-10; *cf. Farmer v. Moritsugu,* 163 F.3d 610, 614 (D.C.Cir.1998) (finding suggestion that BOP's medical director should have ordered treatment for plaintiff's known medical condition "impl[ies] an obligation falling well outside the scope of Moritsugu's role as Medical Director" and that "Moritsugu's response to Farmer's request [letter explaining policy and why she did not establish her entitlement to treatment] comported with constitutional BOP medical policy."). Defendants also argue that this Court lacks personal jurisdiction over defendants because of insufficient service of process. *See* Defs.' Mem. at 12. Because both Nelson and Hernandez-Ricoff have since been served with process, *see* Dkt. ## 18, 19, 20, 21 (U.S. Marshal's returns of service), this argument is moot.