In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1325

LARRY GEORGE,

*Plaintiff-Appellant,*

*v.*

JUDY SMITH, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-C-0403-C—**Barbara B. Crabb**, *Chief Judge.*

SUBMITTED OCTOBER 17, 2007—DECIDED NOVEMBER 9, 2007

Before EASTERBROOK, *Chief Judge*, and MANION and KANNE, *Circuit Judges.*

EASTERBROOK, *Chief Judge.* Larry George, one of Wisconsin's prisoners, sued 24 persons who have had some role in his confinement—guards, wardens, nurses, members of the parole board, and more. His sprawling complaint charges some defendants with failing to provide adequate medical care, others with censoring his mail, yet others with mishandling his applications for parole, and so on. The district court dismissed some of his claims on the pleadings, see 2005 U.S. Dist. LEXIS 16139 (W.D. Wis. Aug. 2, 2005), and the rest on summary judgment, see 2007 U.S. Dist. LEXIS 2421 (W.D. Wis. Jan. 10, 2007), 2006 U.S. Dist. LEXIS 92290 (W.D. Wis. Dec. 12, 2006), and 467 F. Supp. 2d 906 (W.D. Wis. 2006).

The district court did not question George's decision to join 24 defendants, and approximately 50 distinct claims, in a single suit. It should have done so. The controlling principle appears in Fed. R. Civ. P. 18(a): "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. §1915(g). George was trying not only to save money but also to dodge that rule. He hoped that if even 1 of his 50 claims were deemed non-frivolous, he would receive no "strikes" at all, as opposed to the 49 that would result from making 49 frivolous claims in a batch of 50 suits. The district judge likewise assumed that a single non-frivolous claim in a blunderbuss complaint makes the suit as a whole non-frivolous.

In allowing George to pursue this mishmash of a complaint, the district court may have been influenced by *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004). In 2002 the district court had ruled that multiple prisoners cannot join as plaintiffs in a civil suit, notwithstanding the first sentence of Fed. R. Civ. P. 20(a): "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any

question of law or fact common to all these persons will arise in the action." We held in *Boriboune* that the PLRA does not supersede Rule 20, though it does require each plaintiff to pay a separate filing fee and expose each plaintiff to a "strike" if any claim in the consolidated complaint is frivolous. After *Boriboune* the district court has taken an anything-goes approach. But *Boriboune* does not require this. It holds that the Rules of Civil Procedure apply to suits by prisoners. See also, e.g., *Pratt v. Hurley*, 79 F.3d 601 (7th Cir. 1996) (a district court may not limit prisoners to one civil case on file at a time).

This means that the second sentence of Rule 20(a)—"All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action"—is as applicable as the first sentence. A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner. George did not make any effort to show that the 24 defendants he named had participated in the same transaction or series of transactions or that a question of fact is "common to all defendants".

When a prisoner does file a multi-claim, multi-defendant suit, the district court should evaluate each claim for the purpose of §1915(g). *Boriboune* observed: "when *any claim* in a complaint or appeal is 'frivolous, malicious, or fails to state a claim upon which relief may be granted', all plaintiffs incur strikes" (391 F.3d at 855; emphasis added). George thus incurs two strikes in this litigation—one for filing a complaint containing a frivolous

claim, another for an appeal raising at least one frivolous objection to the district court's ruling. Here's just one example: George sued one of the defendants because he saw some particles of food on his plate at dinner, inferred that the dishwasher had malfunctioned, and asserted that this episode placed his health at risk. This does not come within shouting distance of a constitutional grievance under the approach of *Farmer v. Brennan*, 511 U.S. 825 (1994), and similar decisions. George's complaint and appellate brief are full of equally weak claims.

George presents six issues on appeal, but most of these have multiple sub-issues. For example, his first "issue" is: "Was Plaintiff's books and magazines denied for a valid reason?" George ordered lots of publications, and some of them were turned away as pornographic or because they contained gang-related signals. The district court articulated the right rules for the evaluation of these claims under the first amendment, took evidence (some of it in secret to prevent prisoners from learning the prison's security criteria), and concluded that the prison's reasons for withholding the books and magazines are sufficient under decisions such as *Turner v. Safley*, 482 U.S. 78 (1987). The district judge's reasons are spelled out in her opinions and need not be rehearsed here.

Only a few of George's arguments call for analysis. One concerns an "atlas" that George ordered. The prison refused to allow its entry, explaining that it might help prisoners plan escapes. That's a sound reason in theory, but George retorts that the prison library itself contains maps and atlases. A prison could not invoke security as a reason to exclude publications that prisoners may read in the library, and which they may copy out for use in their cells. But maybe this "atlas" was more worrisome. We have put the word in quotations because all we know about the book is that George applies that label to it. When the guards declined to allow George to receive the

volume, he directed them to send it elsewhere, and they complied. George has not described the book in the complaint, produced it in discovery, or provided a title or ISBN that would allow the court to evaluate the prison's claims about its potential effect on security. Plaintiffs need not plead facts, see *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), but they must give enough detail to illuminate the nature of the claim and allow defendants to respond. See *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). George had a chance in his complaint, in later filings in the district court at the summary-judgment stage, and in his appellate brief; he did not take advantage of these opportunities to describe the "atlas", so we lack any reason to disturb the district court's resolution. See *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The prison refused to allow George to have a newsletter from the Jeff Dicks Medical Coalition, informing him that it was a fund-raising proposal that prisoners are not entitled to possess—not so much because any one prisoner is forbidden to make charitable contributions (if he has more than he needs to pay his fines, restitution, and filing fees under the PLRA) but because prisoners are not entitled to solicit money from each other, as the newsletter encourages recipients to do. Money-raising activities in prison may reflect extortion or disguised payments for contraband; the prison lacks means to ensure that any money George collects "for charity" will find its way to the charity. George says that this exclusion violates the first amendment, but he does not cite (and we could not find) any case holding that prisons must allow the entry of literature that encourages prisoners to raise money in violation of prisons' internal controls on the exchange of funds. The Supreme Court has told us that prisons' legitimate concerns about security and administration deserve respect, even when the subject is

the printed word. See, e.g., *Beard v. Banks*, 126 S. Ct. 2572 (2006). George does not say that his own speech has been curtailed, and the newsletter's publisher has not appeared to assert its own constitutional interests (if it has any) in trying to raise money from prisoners.

George maintains that the prison has refused to allow him to speak to the public at large by placing advertisements in newspapers. That advertisements can be protected speech is clear. See, e.g., *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). But what did George want to say? An advertisement calling on the public to elect a Governor who will pardon or parole prisoners would be protected; an advertisement offering to rent a helicopter for an escape would not. An ad proposing a commercial transaction (for example: "like-new atlas for sale") would be protected speech by a member of the general public, see *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557 (1980), but prisons are entitled to control their charges' economic lives, which likely includes an entitlement to control want ads and postings on eBay—if only to prevent prisoners from scamming the public. Neither the complaint nor any of George's other filings tells us whether the advertisements would have contained political commentary, lonely-heart announcements (another potential source of scams), or offers to acquire contraband. To repeat our point about the "atlas": a plaintiff who offers nothing but generalities by the time a case is in the court of appeals cannot expect to prevail.

Finally, a brief word about George's claims against the defendants who handled his administrative protests concerning the events covered by the complaint. The district court held that these officials are entitled to absolute immunity. That conclusion is difficult to reconcile with *Cleavinger v. Saxner*, 474 U.S. 193 (1985), which holds that members of prison-discipline boards are

not entitled to absolute immunity. Doubtless these persons would be eligible for qualified immunity, but we need not reach that question. George's argument on the merits is that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself. That proposition would not help him if it were correct, for he has lost on all of his underlying constitutional theories. But it is not correct. Only persons who cause or participate in the violations are responsible. See *Greeno v. Daley*, 414 F.3d 645, 656–57 (7th Cir. 2005); *Reed v. McBride*, 178 F.3d 849, 851–52 (7th Cir. 1999); *Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir. 1996). Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

All of George's other arguments are well handled in the district court's lengthy opinions.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*