NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 11, 2009[*]
Decided February 11, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-2000

| | |
|---|---|
| SEAN KENDRICK, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 05-C-0976 |
| MATTHEW J. FRANK, et al., | |
| *Defendants-Appellees*. | Lynn Adelman, |
| | *Judge*. |

**O R D E R**

Wisconsin inmate Sean Kendrick refused to allow a prison doctor to examine a fatty mass on his shoulder and now claims that his rights were violated when prison officials declined to refer him to an oncologist. *See* 42 U.S.C. § 1983. He named eighteen current and former employees of the Department of Corrections in his complaint, alleging claims under

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

the Constitution and Wisconsin law.  After screening Kendrick's complaint, *see* 28 U.S.C. § 1915A, the district court allowed Kendrick to proceed on his Eighth Amendment claim of deliberate indifference, but then granted summary judgment in favor of the defendants. Kendrick appeals, and we affirm.

Most of the facts are undisputed, and those that are we construe in the light most favorable to Kendrick.  *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).  In November 2004 Nurse Practitioner Peggy Keuler examined Kendrick and observed on his right deltoid a mass the size of a golf ball.  The lump was not tender to the touch, and Keuler advised Kendrick to schedule a visit with Dr. Enrique Luy for further treatment.  But according to Keuler's treatment notes, Kendrick refused to see Luy. Kendrick does not dispute that Keuler referred him to Luy, but instead claims that Keuler also told him that he needed to "see a cosmetologist."

Kendrick did not schedule an appointment with Dr. Luy.  Instead, he called his sister, a nurse, for advice.  According to Kendrick, his sister informed him that the "proper medical diagnostic procedure" for a fatty shoulder mass required a blood test, MRI, CT scan, or biopsy.  His sister also advised that *only* an oncologist should perform these tests and warned that if the prison doctor biopsied the mass and it turned out to be cancerous, the cancer would "spread rapidly through your body" causing death.

Armed with this "advice," Kendrick began campaigning to have his case referred to an outside specialist.  Four days after his appointment with Nurse Keuler, Kendrick filed an inmate grievance alleging that Keuler had refused to send him "out" for tests.  Two prison administrators reviewed Keuler's notes and dismissed the grievance.  In February 2005 Kendrick filed a second grievance alleging that health-services personnel had refused treatment of his shoulder by failing to refer him to a specialist.  Again, the same administrators dismissed his grievance, explaining that to receive a referral Kendrick had to first be examined by Dr. Luy, who would determine whether Kendrick needed a specialist. Kendrick filed a third, identical grievance one month later.  Two different administrators reviewed Kendrick's request to see a specialist and denied his grievance.

In September 2005 Kendrick filed the present suit in which he named as defendants Nurse Keuler, Dr. Luy, the four administrators who reviewed his grievances, and eleven other prison employees.  The district court permitted Kendrick to proceed against fifteen defendants.

In support of their motion for summary judgment, the defendants submitted Kendrick's health records including Nurse Keuler's notes relating to his initial visit.  In these notes Keuler documented both her recommendation that Kendrick see Dr. Luy for

further treatment and his refusal to do so. Luy also submitted an affidavit explaining that Kendrick had made no effort to see him until December 2005 after filing suit. At that appointment, Luy explained, he examined the mass on Kendrick's shoulder and told him that it was likely a non-cancerous fatty mass known as a lipoma. Luy stated that, in his medical opinion, Kendrick did not need treatment from an oncologist. He also recommended to Kendrick that the mass be excised and biopsied at the prison. According to Luy, Kendrick refused treatment, demanding instead that a specialist perform an MRI and lab tests.

In response to the summary-judgment motion, Kendrick submitted the administrators' denials of his grievances, which documented their repeated explanations that it was up to Dr. Luy to decide if a referral was necessary. Kendrick also submitted a newspaper report that Luy's medical license had been "limited" in 1998 pending completion of a risk-management program due to a negligence suit accusing Luy of stitching a gauze pad inside a patient's body. Finally, Kendrick submitted his own affidavit recounting his initial visit with Nurse Keuler, her directive that he go "see a cosmetologist," and his conversation with his sister regarding the need for a specialist.

The district court granted summary judgment for the defendants, reasoning that Kendrick did not have an Eighth Amendment right to his preferred course of treatment. Our review is de novo. *See Dale v. Poston*, 548 F.3d 563, 568 (7th Cir. 2008). We note that Kendrick includes in his appellate brief new facts and theories of relief, such as his unsupported assertion that Nurse Keuler was unlicensed and his claims of retaliation. But these new contentions are not properly before this court, and we therefore decline to address them. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (holding that appellant could not raise retaliation claim for the first time on appeal); *Renovitch v. Kaufman*, 905 F.2d 1040, 1049 n.12 (7th Cir. 1990) (explaining that appellant may not raise new factual allegations in appeal challenging grant of summary judgment).

For Kendrick to prevail on his Eighth Amendment claim, he would have to establish that prison officials were deliberately indifferent to a serious medical need. *E.g.*, *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008). His main beef seems to be with Nurse Keuler's refusal to send him to an oncologist for testing, and so we address that issue first. To begin, Kendrick has come forward with no evidence that Keuler even had the *authority* to send him to a specialist. Additionally, it is undisputed that Keuler explained to Kendrick that he would have to see Dr. Luy to receive a referral or additional treatment. The grievance examiners also told Kendrick that he had to schedule an appointment with Luy before he could be given a referral. It is also undisputed that Kendrick refused to visit Luy. Keuler was far from indifferent to Kendrick's condition—she referred him to the prison doctor as the next step in his treatment. *See Jackson v. Kotter*, 541 F.3d 688, 698 (7th Cir. 2008). Rather,

Kendrick *himself* was solely responsible for his lack of medical treatment, precluding a claim of deliberate indifference against Keuler for refusing to refer him to a specialist. *See Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) (affirming judgment in favor of medical personnel on claim of deliberate indifference where inmate was the sole cause of delay in treatment); *Walker v. Peters*, 233 F.3d 494, 500 (7th Cir. 2000) (holding that prison doctor who withheld HIV medication did not act with deliberate indifference where inmate refused to take HIV test). This is not a case where the defendant lacked sufficient knowledge to treat an inmate but nevertheless steadfastly refused to refer the prisoner to a specialist. *Cf. Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Because Keuler appropriately responded to Kendrick's medical complaints, we hold that the district court correctly granted summary judgment in favor of Keuler.

Even more frivolous is Kendrick's case against Dr. Luy. It is undisputed that Luy did not examine Kendrick until after he filed this lawsuit. Luy, therefore, had no personal involvement in the decision not to refer Kendrick to a specialist and cannot be liable. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). But even if Kendrick had filed suit after his examination by Luy, summary judgment in favor of Luy would still be appropriate. Luy offered to remove the mass from Kendrick's shoulder and biopsy it to determine whether the mass was cancerous. Kendrick wants an oncologist perform this procedure, but the Eighth Amendment does not confer a constitutional right to demand either a particular type of medical treatment or a certain specialist. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (explaining that inmates are not entitled to demand either specific care or the best care possible). Moreover, what is lacking here is any evidence that the lump is anything more than the harmless lipoma that Luy suspects it to be or that removal within the confines of prison would be either unsafe or ineffective. *See* WebMD, http://www.webmd.com/skin-problems-and-treatments/tc/lipoma-topic-overview (last visited Jan. 28, 2009) (describing lipoma as a non-cancerous fatty growth that does not need to be removed but if desired "can be removed in the doctor's office").

The absence of any evidence of deliberate indifference—indeed, any evidence that Kendrick in fact suffers from a serious medical condition—also ends this case against all of the remaining defendants. We have examined Kendrick's remaining contentions, and all of them are without merit.

AFFIRMED.