NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 19, 2012[*]
Decided November 21, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-1074

| | |
|---|---|
| PERCY MYRICK, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 11-cv-2284 |
| | |
| KEITH ANGLIN, et al., | Michael P. McCuskey, |
| *Defendants-Appellees.* | *Judge.* |

## O R D E R

Percy Myrick, an Illinois inmate, alleges in this suit under 42 U.S.C. § 1983 that a long list of administrators, guards, and healthcare staff at Danville Correctional Center denied him medical treatment, adequate clothing, and basic hygiene items. Myrick's litany of claims against these unrelated defendants should have prompted the district court to dismiss the improperly joined defendants or carve the action into separate lawsuits, *see Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012); *Owens v. Hinsley*,

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 606–07 (7th Cir. 2007), but misjoinder is not a jurisdictional flaw and the court instead plowed ahead. After convening a video conference with Myrick as an aid in screening his complaint, *see* 28 U.S.C. § 1915A, the court dismissed the action for failure to state a claim. We conclude that the dismissal of several claims and defendants was error.

Our review of Myrick's complaint is de novo, and for now, in evaluating its sufficiency, we accept Myrick's factual allegations as true. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). By the time he filed his complaint in December 2011, Myrick had been incarcerated at Danville for nearly eight years. In November 2008 a member of the medical staff prescribed a hernia belt (or "truss") for a painful abdominal hernia. But the prescription was not filled despite Myrick's repeated protests to Warden Keith Anglin, Assistant Warden Victor Calloway, and healthcare administrator Mary Miller. After two years of inaction, the medical staff gave Myrick another prescription, but, as before, the prescription was not filled. At one point a hernia belt did arrive, but it was too small to fit Myrick, and so he waited again while promised a larger size. Finally, around September 2010, he saw Dr. Talbot, who rescinded the prescription rather than fill it. Talbot told Myrick that, in lieu of a hernia belt, he should restrict his movement. All the while Myrick was experiencing pain from the condition.

Meanwhile, in July 2009 Myrick was diagnosed with genital herpes. Defendant Williams, a nurse practitioner, supplied him with a topical ointment, but it proved ineffective. He told her that he was suffering from a painful flare-up, but Williams refused alternative treatment. Myrick also complained in writing to Warden Anglin and to Miller, but neither responded. Only after his condition had continued unabated for 11 months did another member of the medical staff intervene: Myrick was at the healthcare unit for a physical, and the examiner questioned why his herpes had gone untreated. He was prescribed a drug that alleviated the flare-up, and since then has not experienced another.

In August 2010, Myrick went without soap for a period of approximately 11 days. He had received a half bar from defendant Clauson, who told him that it should last an entire month. It lasted, however, only a few days. When Myrick finally asked for more soap, Clauson gave him another half bar. Around this same time, Myrick was exposed to dust from the vents in his cell that made it difficult for him to breathe. He wrote Warden Anglin about the ventilation and also asked for supplies to clean his cell. Anglin replied that Myrick could request a mop and a broom to clean his cell and also told him to notify Majors Wright and Brown so that they could arrange for the vent to be cleaned. Myrick did notify Wright and Brown, but his letters went unanswered.

By late October 2010, Myrick was suffering from a "skin issue" and visited the healthcare unit, where defendant Elanie, a physician's assistant, denied him treatment. A week later, this condition had become an "outbreak on [his] body." Myrick also had developed a sore on his head. He returned to the healthcare unit, but again he was denied treatment, this time by Dr. Talbot. His condition persisted, and by July 2011 he was suffering from a "very, very painful" boil on his buttocks. He twice asked defendant Dopkins, a prison guard, for permission to visit the healthcare unit, complaining that the "pain was excruciating." Dopkins refused. When Myrick visited the health care unit the next day, defendant Barbor, a nurse, gave him Tylenol and an antibiotic, but five days later his "boil" tested positive for methicillin-resistant Staphylococcus aureus (MRSA). A sore on his right arm also tested positive for MRSA. Myrick was isolated for four days and treated with antibiotics until the infection was resolved. While in isolation, Barbor and another nurse refused to allow him to shower and forced him to sleep in sheets soiled with pus and blood. Myrick was released, but his head sore remained untreated and bled onto his pillowcase. When Myrick asked another guard, defendant Cannon, to call the clothing room to get him a new pillowcase, Cannon refused.

All of these persons are named as defendants in Myrick's complaint. He claims that he was denied constitutionally adequate medical treatment for his hernia, genital herpes, and skin infections. Myrick also claims that he suffered unconstitutional conditions of confinement because he was housed in a "filthy cell," was not given more soap, lacked clean clothes and bedding, and was exposed to dust that made breathing difficult. After reviewing the complaint and briefly questioning Myrick during the video conference, the district court dismissed the complaint. The court did not issue a written statement of reasons, but it commented on several of Myrick's claims during the video conference and, in a step that we recommend to all district courts that use such screening conferences, ordered a transcript of that conference prepared in response to Myrick's appeal. The court told Myrick that his hernia was not a serious medical condition and that his allegations did not suggest that medical staff had been deliberately indifferent—which, the judge said, "means they didn't see you." And neither is genital herpes a serious medical condition, the court continued, because it "can't kill you." The court added that Myrick did not have a constitutional right to new clothing, nor did he have a plausible claim concerning his dirty cell unless he could show resulting medical harm. On appeal Myrick argues that all of his claims should be reinstated.

To plead an Eighth Amendment violation for the denial of medical care, an inmate's complaint must allege both an objectively serious medical condition and an official's deliberate indifference to that condition. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Arnett*, 658 F.3d at 750; *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). A medical condition is

sufficiently serious if the failure to treat the condition could result in the unnecessary and wanton infliction of pain and the condition has either been diagnosed by a physician as mandating treatment or the need for treatment would be obvious to a layperson. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *Gutierrez v. Peters*, 111 F.3d 1364, 1373–74 (7th Cir. 1997). Deliberate indifference can be proven by showing that a prison official knows of and disregards a substantial risk to an inmate. *See Arnett*, 658 F.3d at 751.

A hernia can be a serious medical problem. *See Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011); *Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006). And Myrick alleged that his untreated herpes and hernia were painful and had been recognized by medical staff as requiring treatment; if his allegations are true, these conditions were objectively serious. *See Gomez*, 680 F.3d at 865; *Gutierrez*, 111 F.3d at 1374. Likewise, Myrick's claim of "excruciating pain" from his skin infections, including the MRSA infections, presented a sufficiently serious condition to support an Eighth Amendment claim. *See Gonzalez*, 663 F.3d at 314; *Gutierrez*, 111 F.3d at 1370–71.

Myrick also alleges deliberate indifference with respect to these ailments. Delaying treatment may constitute deliberate indifference if the delay exacerbates the injury or unnecessarily prolongs an inmate's pain. *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Although a difference in medical opinion between an inmate and prison medical staff does not support a claim of cruel and unusual punishment, *see Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003), Myrick alleges that without the prescribed hernia belt and because of the delay in treatment for his herpes he suffered unnecessary pain. And despite the district court's assertion that a finding of deliberate indifference would require that doctors refused even to see Myrick, a prisoner need not show that he was literally ignored to prevail on an Eighth Amendment claim. *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Nor may prison healthcare staff persist with treatment they know to be ineffective when reasonable alternatives are available. *See Berry*, 604 F.3d at 441–42. The district court therefore erred in dismissing Myrick's claims against Talbot, Williams, and (although we question whether she was qualified to give Myrick the treatment he sought) Elanie. Dismissal also was premature with respect to Myrick's claim against Dopkins, who refused to let Myrick visit the healthcare unit despite his claim of excruciating pain.

Dismissal also was improper as to healthcare administrator Mary Miller. Although in his complaint Myrick does not discuss extensively Miller's personal role in his treatment, he does allege that he complained to her directly about the medical staff's failure to fill his

prescription for a hernia belt, as well as the absence of treatment for his herpes. Moreover, at this stage Miller's position justifies the inference that she bore some responsibility for the delay in Myrick's treatment. *See Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). Miller's position would also allow her to identify those responsible for the treatment delays. *See Antonelli*, 81 F.3d at 1428; *Duncan*, 644 F.2d at 655.

Also sufficient is Myrick's claim that the dust from his cell's vent caused him pain and difficulty breathing. Myrick alleges that Warden Anglin told him to alert Majors Wright and Brown about the faulty ventilation, and although he did so, these two defendants did nothing to correct the problem. Complaints of inadequate ventilation may state a claim for relief, *Board v. Farnham*, 394 F.3d 469, 485–86 (7th Cir. 2005); *see Ciarpaglini*, 352 F.3d at 331, and Myrick's complaint is not so implausible that the district court could dismiss it at the pleading stage.

The rest of Myrick's claims, however, fall short. First, although he claims that the inadequate medical care resulted from an order by Warden Anglin and his assistants to cut medical costs, Myrick's complaint does not plausibly suggest the existence of such a policy. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Likewise deficient is Myrick's claim that he was denied soap by defendant Clauson. To plead an Eighth Amendment claim of unconstitutional conditions of confinement, an inmate must allege that prison officials denied him "the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834 (quotation marks and citation omitted), which would include hygiene items such as soap, *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). Myrick's complaint does say that at one point he went without soap for 11 days, but his allegations do not suggest that he asked for more and was refused. Indeed, the one time that Myrick told Clauson that his soap supply had run out, Clauson gave him more.

Myrick also fails to state a claim against the nurses and guards who refused his requests for showers or new clothes and bedding. We have noted that limiting inmates to weekly showers does not violate the Eighth Amendment. *See Henderson v. Lane*, 979 F.2d 466, 468–69 (7th Cir. 1992); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). Moreover, Myrick does not allege that he was prevented from washing at the sink. *See Davenport*, 844 F.2d at 1316. Nor does he claim that the denial of new bedding and clothing exacerbated or prolonged his medical conditions or that he could not wash his clothes and bedding.

Finally, Myrick does not state a plausible claim for relief based on the condition of his cell. Although he did not receive the specific cleaning supplies he requested, Myrick does not allege that he was unable to clean his cell with supplies available to him.

Accordingly, the judgment of the district court is VACATED as to defendants Talbot, Williams, Elanie, Miller, Dopkins, Wright, and Brown, and the case is REMANDED for further proceedings against those defendants. In all other respects the judgment is AFFIRMED. On remand, we suggest that the district court consider recruiting counsel for Myrick.