In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3425

RICHARD D. BUDD,

*Plaintiff-Appellant,*

*v.*

EDWARD B. MOTLEY, Sheriff, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 11-CV-2227—**Michael P. McCuskey**, *Judge.*

SUBMITTED DECEMBER 5, 2012[*]—DECIDED APRIL 2, 2013

Before ROVNER, WILLIAMS, and HAMILTON, *Circuit Judges.*

PER CURIAM. Richard Budd, now an Illinois state prisoner, alleges in this suit under 42 U.S.C. § 1983 that as a

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* Fed. R. App. P. 34(a)(2)(C).

pretrial detainee he was subjected to unconstitutional conditions of confinement at the Edgar County Jail and that the sheriff was deliberately indifferent to his medical needs. After convening a video conference with Budd as an aid in screening his complaint, *see* 28 U.S.C. § 1915A, the district court dismissed the action for failure to state a claim. The court, however, furnished no written statement of reasons and did not prepare a transcript of the video conference, leaving us unable to discern the court's reasoning. We recently recommended that all district courts that employ screening conferences prepare transcripts in response to inmates' appeals, *see Myrick v. Anglin*, 2012 WL 5870817, at *2 (7th Cir. Nov. 21, 2012) (nonprecedential disposition), and we reiterate that advice here. Nevertheless, our review is de novo, and we conclude that Budd has stated a valid claim challenging the conditions of his confinement. The district court, however, properly dismissed his medical indifference claim.

For purposes here, we accept the allegations in Budd's complaint as true. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Following his arrest in 2009, Budd spent 45 days in the Edgar County Jail. In two newspaper articles that Budd attaches to his complaint, Sheriff Edward Motley describes the jail as not "livable" and violating "acceptable standards." During his detention, Budd was confined with eight inmates in a portion of the facility intended for three where he had to sleep on the floor alongside broken windows and cracked toilets. Two years later, after another arrest, Budd was back in the jail, this time in another section where conditions

were no better. The cells were still overcrowded, again forcing Budd and other inmates to sleep on the floor even though shower water leaked there. These cells also had broken windows, exposed wiring, extensive rust, sinks without running water, toilets covered in mold and spider webs, and a broken heating system. The jail furnished the inmates with no supplies to clean for themselves.

Budd returned to the jail's lower cell block four months later when he was arrested for theft. Again he had to sleep on the floor, and his cell's vents were blocked, the heating and air conditioning systems did not work, and the inmates were denied any recreation. While living in these conditions, something scratched or bit Budd's leg. After infection and swelling set into his leg, the jail nurse on duty gave Budd ice for the swelling. Budd wrote to the sheriff asking to see a doctor, and he was taken to a local hospital. Over the course of several hospital visits spread over many weeks, he received tests, observation, medication, and an MRI of his leg. By this point, he developed a "hole in [his] leg," which the hospital doctors attributed to the unsanitary conditions of the jail. After he became "hysterical" at the prospect of returning to the jail, a state judge ordered that he be taken to another facility, as his condition had become "a mental issue."

In his complaint, Budd asserts that conditions at the jail fell below constitutional standards, and he alleges that his jailers were deliberately indifferent to his medical needs. He named as defendants Sheriff Motley

and the Edgar County Sheriff's Office. The district court dismissed Budd's complaint for failure to state a claim. Budd now appeals, arguing that he alleged facts sufficient to state a constitutional violation.

We conclude that Budd has alleged conditions at the jail that state a claim for relief. His complaint arises under the Fourteenth Amendment's due process clause (because he was a pretrial detainee), but we use Eighth Amendment case law as a guide in evaluating his claims. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012). Jail officials violate the Eighth Amendment if they are deliberately indifferent to adverse conditions that deny "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted), including adequate sanitation and personal hygiene items, *see Rice*, 675 F.3d at 664; *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007). Budd alleges poor sanitation and hygiene alongside lack of heat and bedding, blocked ventilation, overcrowding, and inadequate recreation. We examine each of these, mindful that conditions of confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have "a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Gillis*, 468 F.3d at 493; *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995) (reversing dismissal of complaint alleging that plaintiff spent a week and a half in a cell without adequate heat, clothing, or bedding).

To begin, we have held that Budd's allegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief. *See Vinning-El*, 482 F.3d at 924-25 (reversing summary judgment where prisoner was held for six days without sanitation items in cell contaminated with human waste and in which sink and toilet did not work); *Johnson v. Pelker*, 891 F.2d 136, 139-40 (7th Cir. 1989) (reversing summary judgment where prisoner was denied cleaning supplies and confined for three days to cell that was smeared with human waste and lacked running water). Moreover, the harm that Budd alleges is not merely speculative; he asserts that three doctors told him that unsanitary conditions caused his infection. He also alleges that the jail conditions traumatized him. Budd's exposure to psychological harm or a heightened risk of future injury from living in an infested jail is itself actionable. *See Thomas v. Illinois*, 697 F.3d 612, 615-16 (7th Cir. 2012) (admonishing district judges to treat psychological and probabilistic harm from infested prisons as seriously as realized physical harm).

In addition, we have observed that jails must meet minimal standards of habitability. This includes adequate bedding and protection from cold, both of which were allegedly lacking here. *See Gillis*, 468 F.3d at 493; *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997); *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996); *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987). Moreover, the fact-intensive inquiry into the inadequate heating, the severity

of the resulting cold, and the duration of the inmate's exposure to it generally requires the development of a factual record. *See Dixon*, 114 F.3d at 643. Likewise, the allegations of overcrowding, lack of recreation, and poor air circulation also contribute to a valid conditions-of-confinement claim. *See Smith v. Fairman*, 690 F.2d 122, 125 (7th Cir. 1982) (evaluating claim of unconstitutional overcrowding under "totality of the conditions of confine-ment" approach); *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001) (observing that exercise is "a necessary requirement for physical and mental well-being"); *Shelby Cnty. Jail Inmates v. Westlake*, 798 F.2d 1085, 1087 (7th Cir. 1986) (recognizing a right to adequate ventilation that is violated if the ventilation is so poor as to constitute punishment). In combination, therefore, the conditions that Budd alleges at the jail state a valid conditions-of-confinement claim.

We pause to observe the capacity in which Budd is suing the defendants on his conditions claim. Budd's complaint does not specify the capacity in which he is suing, but in bringing this claim, Budd seeks to impose liability on the Sheriff and his office for creating the conditions at the jail and permitting them to persist. He is describing a municipal practice or custom in running the jail, rather than the Sheriff's personal conduct, and an individual-capacity suit would not be plausible on the facts he alleges. Accordingly, we conclude that Budd has sued the Sheriff in his official capacity. *See Hill v. Shelander*, 924 F.2d 1370, 1372-73 (7th Cir. 1991). Because a suit against a government office and the officeholder are identical, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

690 n.55 (1978), the two defendants—the Sheriff and his office—are redundant on this claim.

We turn now to Budd's allegation of deliberate indifference to his medical needs, which we conclude fails to state a claim for relief. According to his complaint, Budd was taken to see a nurse as soon as he informed the officer on duty about his leg wound. And although he was dissatisfied with her treatment, he acknowledges that he was taken to the hospital promptly after writing a letter to Sheriff Motley asking to see a doctor. During visits to the hospital, Budd alleges that he received medical attention, medication, testing, and ongoing observation. These allegations refute any claim of deliberate indifference to his medical needs. *See Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 591-92 (7th Cir. 1999) (affirming grant of summary judgment on deliberate indifference claim where guards had monitored sick inmate and alerted medical staff to his complaints); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (affirming dismissal of deliberate indifference claim of plaintiff who "repeatedly received treatment" for cyst).

Finally, Budd also argues that the district court abused its discretion by not granting his motion for appointment of counsel because, he says, his low level of education left him unable to litigate effectively on his own. The district court declined to rule on this motion, apparently viewing it as moot in light of its ruling that Budd had failed to state a claim. On remand, the district court should rule on the motion. *See Pruitt v. Mote*, 503 F.3d 647, 660 (7th Cir. 2007) (en banc).

The judgment of the district court is AFFIRMED in part and VACATED and REMANDED in part for further proceedings consistent with this opinion.