NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted April 11, 2014[*]
Decided April 14, 2014

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1670

| | |
|---|---|
| JEREMY M. WRIGHT, <br>     *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 11-cv-00225-MJR-SCW |
| JACKIE MILLER, et al., <br>     *Defendants-Appellees.* | Michael J. Reagan, <br> *Judge.* |

**O R D E R**

Jeremy Wright, an inmate at Pontiac Correctional Center, challenges the district court's decision to grant summary judgment in his § 1983 suit. He alleges that the prison officials were deliberately indifferent to his safety when they denied his request for protective custody. He seeks punitive damages and an injunction to place him permanently in protective custody. The district court concluded that it could not issue

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

an injunction because Wright had not established a continuing constitutional violation. It also ruled that the defendants had not been deliberately indifferent to a substantial risk of harm. We agree with the district court that it could not order an injunction and that the top-level administrators are not liable. But we remand because of a genuine fact dispute over whether one defendant intentionally exposed Wright to likely and severe violence.

In reviewing the district court's ruling, we construe the record and draw reasonable inferences in Wright's favor. *See Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 232 (7th Cir. 2014). Wright has been incarcerated since 1996. In 1999, while he was at Stateville Correctional Center, prison officials placed him in protective custody because he had renounced his membership in the Latin Kings gang and the gang might target him for retaliation. Officials transferred Wright three years later to Pontiac, a prison exclusively for inmates in protective custody. He remained in protective-custody status there for six years, until officials assigned him to the segregation unit for misconduct.

Upon his release from the segregation unit seven months later, Wright asked to return to protective custody at Pontiac. He remained at Pontiac, and thus in protective custody, while his request was considered. Wright offered Pontiac two reasons for his request: his sexual orientation and status as an ex-Latin King. Even though ten years earlier Stateville officials had first put Wright in protective custody because he was an ex-Kings member, Pontiac staff could not verify his ex-member status. So the warden at Pontiac denied Wright's request, and the Administrative Review Board affirmed the warden's decision. Because Pontiac is exclusively for protective-custody inmates, once the Board denied Wright's appeal, prison authorities transferred him to Menard Correctional Center in February 2011.

During his first four days at Menard, Wright lived in the general population. After Latin King members threatened him, he asked several officers (none is a defendant here) to place him in protective custody. When they refused, Wright filed an emergency grievance. Menard officials removed him from the general population pending the resolution of his grievance.

An internal-affairs officer (also not a defendant) investigated the grievance and recommended that the prison return Wright to the general population. The officer reasoned that the threats Wright received did not warrant protective custody because he could not name the Latin Kings members who had threatened him. The officer also

speculated that Wright was seeking protective custody only to return to Pontiac to continue a relationship with another Pontiac inmate.

Wright sought and received a hearing with defendant David Hennrich, a casework supervisor, to review his request for protective custody. Hennrich explained that he recommended inmates for protective custody only if internal affairs made the same recommendation. He also thought that Wright did not require protective custody because, with his stature and size, he could protect himself. Wright replied that he feared attack because he was both a homosexual and a former Latin Kings member. Upon hearing this information, Hennrich agreed, warning that "The Kings ain't no sissies, they'll stab your ass up dude for being homosexual." After predicting that the Latin Kings would stab him for being a homosexual, Hennrich nonetheless recommended that the warden return Wright to the general population.

Relying on Hennrich's recommendation and that of the internal–affairs officer, Menard's warden saw no verifiable threat to Wright's safety and denied his request for protective custody. Wright appealed to the Administrative Review Board. The chair of the Board upheld the warden's decision, and the director of the Illinois Department of Corrections concurred. This process lasted about a month, after which prison officials placed Wright in the general population, where he feared an imminent attack.

Four hours after officials returned him to the general population, inmates indeed threatened Wright. He again requested protective custody and was immediately removed from the general population. This time, though, he was able to name the inmates who had threatened him, and officials approved his request. Wright was transferred to Stateville and later to Pontiac, where he is currently incarcerated.

Wright has sued Hennrich, alleging that he violated the Eighth Amendment by recommending against granting Wright's request for protective custody even though he knew that Wright would be stabbed. (Wright initially named "Counselor Hendricks," but the parties agree that the defendant is David Hennrich.) Also named in this suit are Menard's warden, the director of the Illinois Department of Corrections, and the chair of the Administrative Review Board. Wright seeks punitive damages and an injunction against removal from protective custody.

Wright's complaint survived screening under 28 U.S.C. § 1915A, and the district court granted summary judgment to all defendants. It denied Wright's request for an injunction because he was in protective custody, so he could show no ongoing violation.

The court also ruled that his claims for punitive damages failed. The claims against the Board member and the director of the Department failed, the court reasoned, because they merely reviewed the decision on an administrative grievance. *See George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). And Menard's warden was not liable because he permissibly relied on a subordinate's recommendation. *See Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). Finally, the court addressed the claim against Hennrich. It ruled that Hennrich had relied on the internal-affairs report and Wright's height and stature and therefore was not deliberately indifferent. The court dismissed Hennrich's prediction that, "The Kings ain't no sissies, they'll stab your ass up dude for being homosexual," as insufficient to warrant a trial. Wright asked for leave to file a motion under Federal Rule of Civil Procedure 59, but appealed two days later.

Several of Wright's arguments clearly lack merit and can be resolved with little discussion. Wright first contends that the district court should have ruled on his request to file a Rule 59 motion. But when Wright appealed two days after filing his request, he divested the district court of jurisdiction. *See United States v. Woodard*, 744 F.3d 488, 495 (7th Cir. 2014); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 731 (7th Cir. 2001). He next challenges the district court's ruling that he could not receive an injunction. A court may enjoin state officials only where there is an impending or ongoing violation of federal law. *See Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 894 (7th Cir. 2012); *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991); *Toney v. Burris*, 829 F.2d 622, 626 (7th Cir. 1987). Here, prison officials have approved Wright's request for protective custody, thereby halting any federal violation. *See Farmer v. Brennan*, 511 U.S. 825, 845–46 (1994); *Kress*, 694 F.3d at 893–94. Although Wright's protective custody is periodically reviewed, *see* ILL. ADMIN. CODE tit. 20, § 501.330(a), prison officials have not threatened to return him to the general population. And a speculative fear of injury is not a ground for an injunction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 104-05 (1983). Next, Wright contests the dismissal of the top-level administrators—the warden, the Board chair, and the director of the Department of Corrections. But they cannot be vicariously liable for their subordinate's actions. *See Burks*, 555 F.3d at 595–96; *Garvin v. Armstrong*, 236 F.3d 896, 898–99 (7th Cir. 2001). Likewise, they cannot be liable for relying, as they reasonably did, on the recommendations of those who had concluded that there was no verifiable threat to Wright's safety. *See George*, 507 F.3d at 609–10.

That brings us to the claim against Hennrich. To warrant a trial, the record must allow a rational jury to find that Hennrich knew that Wright faced a significant risk of harm from a "particular vulnerability" and exposed him to that risk anyway. *Brown v. Budz*, 398 F.3d 904, 915 (7th Cir. 2005). The evidence allows such a finding: Wright told

Hennrich that Wright is a homosexual former member of the Latin Kings. After hearing this, Hennrich knew that, despite Wright's size and the opinion of the internal-affairs officer, "they'll stab up [his] ass." Even though he knew that the Kings would stab Wright after he returned to the general population, Hennrich recommended that the warden place him there anyway. A trier of fact could conclude, therefore, that he unreasonably refused to use his knowledge of Wright's near-certain stabbing to depart from his rigid practice of seconding the opinion of an internal-affairs officer. True, before others removed Wright to safety, Wright was not attacked in the four hours that he remained in the general population. But as far as Hennrich knew and expected, the warden would accept Hennrich's recommendation (as he did) and return Wright to the general population indefinitely, where he would live in fear and get stabbed. Even without an actual injury, the mere probability of the harm to which Hennrich exposed Wright can be sufficient to create liability: The "heightened risk of future injury" a prison official intentionally or with reckless indifference inflicts on an inmate "is itself actionable." *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013); *see also Thomas v. Illinois*, 697 F.3d 612, 614–16 (7th Cir. 2012) (explaining that "hazard, or probabilistic harm" could allow recovery); *Irving v. Dormire,* 519 F.3d 441, 449 (8th Cir. 2008) (concluding that guard's alleged attempts to induce other inmates to assault plaintiff prisoner "posed a substantial risk of serious harm to [the prisoner's] future health").

On similar records, we have required factfinders to decide whether to credit the evidence that prison officials endangered inmates by recklessly exposing them to an attack. *See Weiss v. Cooley*, 230 F.3d 1027, 1030, 1032 (7th Cir. 2000) (reversing summary judgment and remanding for trial where evidence suggested that prison official knew of substantial risk that an inmate would be attacked but said, "you have to face the music sometime"); *Walsh v. Mellas*, 837 F.2d 789, 798–99 (7th Cir. 1988) (ruling that evidence supported claim that prison officials violated Eighth Amendment when they placed inmate in cell with gang leader despite knowing of gang's threats against inmate).

We end by noting that, because Wright suffered no physical injury, Hennrich's potential liability is limited. Under the Prison Litigation Reform Act, absent an accompanying physical injury, a court may not award compensatory damages for non-physical harm, such as fear of attack. *See* 42 U.S.C. § 1997e(e); *Thomas*, 697 F.3d at 614. Wright may seek only nominal or punitive damages. *See Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003). Moreover, to award punitive damages, a jury must find that Hennrich was "motivated by evil motive or intent" or acted with "reckless or callous indifference" to Wright's constitutional rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Calhoun*, 319 F.3d at 942. This standard mirrors the standard for Wright's

underlying Eighth Amendment claim, which also requires a trier of fact to find that Hennrich acted with deliberate indifference to Wright's safety. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 930 (7th Cir. 2004) (noting that culpability required for § 1983 liability is the same as the punitive damage standard); *Walsh*, 837 F.2d at 801–02 (same).

Accordingly, we AFFIRM the district court's decision in all respects except that we REVERSE and REMAND for further proceedings on Wright's claim against defendant Hennrich.