NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2014[*]
Decided November 5, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 13-3296

| | |
|---|---|
| LEE BLANKENSHIP,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 10-542-GPM |
| KIMBERLY BIRCH,<br>    *Defendant-Appellee.* | G. Patrick Murphy,<br>*Judge.* |

**O R D E R**

Lee Blankenship, an Illinois state prisoner, challenges the district court's grant of summary judgment to Dr. Kimberly Birch. Blankenship sued Dr. Birch under 42 U.S.C. § 1983, accusing the physician of deliberate indifference to the pain in his left elbow and the numbness in his toes. Because no reasonable juror could conclude from the record that Dr. Birch denied Blankenship constitutionally adequate care, we affirm.

---

[*] This successive appeal was submitted to the original panel under Seventh Circuit Operating Procedure 6(b). After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

We recount the facts in the light most favorable to Blankenship. *See Tradesman Int'l, Inc. v. Black*, 724 F.3d 1004, 1009 (7th Cir. 2013). Following an unexplained injury in 2006, Blankenship began to experience chronic pain in his elbow. An orthopedic surgeon determined in January 2009 that Blankenship had degenerative joint disease and loose bone fragments in his left elbow and recommended surgery. The surgery, however, was delayed until July because Blankenship had an abnormal EKG test. About a week after surgery, the orthopedist wrote that he wanted Blankenship to stretch, exercise, and see him again in about two months for a follow-up visit.

Dr. Birch, the prison's medical director, also treated Blankenship. She first saw Blankenship shortly before his surgery to treat his hypertension and examined him again after surgery. In a visit the day after the surgery, Dr. Birch prescribed Ultram and Motrin for his elbow pain. (Blankenship later refused to take these drugs because he feared stomach damage.) Two months after the surgery, around the time that the surgeon had recommended a follow-up visit, Blankenship saw Dr. Birch. He reported no pain, and Dr. Birch advised him to continue to stretch regularly.

Blankenship never saw the orthopedist for follow-up, but he continued to see Dr. Birch throughout the fall and winter of 2009. When he complained to a nurse in December that his left toes were numb, the nurse sent him to Dr. Birch. The doctor examined Blankenship's toes three days later and found them to have good circulation with no swelling or discoloration. Dr. Birch assured Blankenship that the numbness in his toes was not from hypothermia but probably caused by ill-fitting shoes. She advised Blankenship to wear different shoes and to follow-up with her.

About a year after surgery, in July 2010, Blankenship began to experience renewed elbow pain and numbness in his left toes. Dr. Birch ordered x-rays of the foot and elbow joints. The x-rays revealed osteoarthritis, an incurable condition. Two months later Blankenship reported that several toes were still numb, so Dr. Birch prescribed him Neurotin (a pain reliever for nerve pain) and recommended that he get new shoes. The next month, Blankenship reported that the numbness had receded though he had not gotten the new shoes. Dr. Birch received no more complaints about Blankenship's toes, and by November 2010 Blankenship no longer complained to anyone about his toes or elbow.

In moving for summary judgment, Dr. Birch argued that she was not deliberately indifferent because she provided Blankenship adequate care, including pain medication and a stretching regimen following his elbow surgery. She also argued that

Blankenship's numb toes were not a serious medical condition and that, in any event, she prescribed him Neurotin to deal with that problem. Blankenship responded to the motion, and the court set a hearing on it. Blankenship did not appear at the hearing, so the district court granted Dr. Birch's summary-judgment motion both because of Blankenship's absence and because Dr. Birch was not deliberately indifferent.

Blankenship responded with three motions, all of which the court denied. First, he asked for more time to appeal the grant of summary judgment. He argued that he was not at the summary-judgment hearing because he was incarcerated, guards would not take him to court, and he had no money to purchase stamps to contact the court. Second, after the court refused his request, he asked the court to reconsider it. And third, he later moved for post-judgment relief under Federal Rule of Civil Procedure 60(b).

These rulings prompted three appeals. We construed the first appeal—the present one—as challenging both the ruling on summary judgment and the decision to deny him extra time to appeal that ruling. After a limited remand from us, the district court gave Blankenship the extra time to appeal, we granted him pauper status, and we then ordered the parties to brief the merits. Blankenship filed two more appeals, one (again) challenging summary judgment and another challenging the denial of his motion under Rule 60(b). We dismissed these for failure to pay the filing fees, but we refused to collect the fee for the second appeal of the summary-judgment ruling after observing that we allowed the first appeal to proceed to the merits of that ruling.

Before evaluating the merits of this appeal, we address Dr. Birch's threshold contention that this appeal is moot. She argues that Blankenship has already received the only relief that he requested in this appeal—time to appeal the ruling on summary judgment, and we dismissed (for failure to pay filing fees) his later appeal of that summary-judgment ruling. But Blankenship's challenge to summary judgment is not moot. First, there remains a live controversy between Blankenship and Dr. Birch over the adequacy of his medical care. *See Aljabri v. Holder*, 745 F.3d 816, 820 (7th Cir. 2014). Second, by refusing to collect a fee for the second appeal of the grant of summary judgment, we recognized that this first appeal challenged that grant. Third, the dismissal of the second appeal for failure to pay the filing fee was not a decision on the merits, so it does not preclude this appeal. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982); *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011) (dismissal for failure to prosecute not a dismissal on the merits of the case). Thus we proceed to the merits.

To defeat Dr. Birch's motion for summary judgment, Blankenship needed to provide evidence that his medical needs were serious and that Dr. Birch knew of and disregarded a substantial risk of harm from these medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). He has not.

Blanknenship first contends that, by failing to prescribe any pain medication to him after his surgery, Dr. Birch was indifferent to his elbow pain. But Blankenship offers no evidence to support this argument. In fact, the record shows that a day after surgery Dr. Birch prescribed Blankenship two drugs, Ultram and Motrin, for his pain. Blankenship later refused to take the pain medication, but when a prisoner chooses not to receive treatment, including pain medicine prescribed by a doctor, the doctor is not deliberately indifferent. *See Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) (finding no deliberate indifference when inmate refused offered medical care); *Walker v. Peters*, 233 F.3d 494, 500 (7th Cir. 2000) (finding no deliberate indifference when inmate refused to take preliminary test before beginning treatment).

Blankenship next argues that Dr. Birch failed to provide adequate treatment for his numb toes, but here too the record compels the opposite conclusion. Over a six-month period she examined his toes, took x-rays, prescribed another drug for numbness and pain, and urged him to use different shoes (advice that he ignored). This combination of treatment refutes any claim of deliberate indifference to his medical needs. *Budd v. Motley*, 711 F.3d 840, 844 (7th Cir. 2013); *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997).

Blankenship also contends that Dr. Birch failed to prescribe physical therapy after his surgery, but this argument also does not suggest deliberate indifference. Although Dr. Birch did not prescribe physical therapy, she recommended that Blankenship complete a stretching routine. The National Institute of Health reports that stretching is a standard post-operative practice, *see* Phil Page, *Current Concepts in Muscle Stretching for Exercise and Rehabilitation*, INT'L JOURNAL OF SPORTS PHYSICAL THERAPY, http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3273886/ (last visited on Oct. 22, 2014), and Blankenship offers no contrary evidence. In any event, a disagreement over a reasonable recovery regimen is insufficient to establish an Eighth Amendment violation. *Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003) (observing that a disagreement with prison doctors over a reasonable course of treatment is not a cognizable claim); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997) (ruling that Eighth Amendment does not guarantee specific medical treatment).

Finally Blankenship argues that Dr. Birch was deliberately indifferent because she did not advise him to follow-up with the surgeon two months after surgery, as the orthopedist had recommended. Ignoring a surgeon's instructions to return an inmate for follow-up care can support a claim of deliberate indifference. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *Gil v. Reed*, 381 F.3d 649, 663–64 (7th Cir. 2004). But to succeed, Blankenship needed to show that the lack of follow-up visit worsened his elbow condition. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009). And the record does not suggest that Blankenship's elbow pain worsened as a result of not visiting the orthopedist two months after the surgery. To the contrary, his medical records are devoid of *any* complaints about elbow pain until July 2010, nearly a year after surgery. At that point Dr. Birch sent Blankenship for x-rays and diagnosed osteoarthritis, a condition for which surgery is not a cure. Thus Blankenship failed to show that his condition worsened because he did not receive more surgical attention. *See Estelle*, 429 U.S. at 107.

Accordingly, the district court's judgment is AFFIRMED.